**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARTA TOSI,**

        **Plaintiff,**

**-vs-**                                         **Case No. 6:05-cv-431-Orl-28KRS**

**ORANGE COUNTY SHERIFF'S OFFICE,**
**ORANGE COUNTY, CITY OF ORLANDO,**
**FLORIDA DEPARTMENT OF LAW**
**ENFORCEMENT, COLLINGTON**
**CAMPBELL, VICKI BUFORD,**
**UNKNOWN ORANGE COUNTY SHERIFF**
**DEPUTIES,**

        **Defendants.**

_____

## ORDER

This cause is before the Court on the motion by Defendant Florida Department of Law Enforcement ("FDLE") to dismiss Count IV (Negligent Supervision) of Plaintiff Marta Tosi's Complaint. (Doc. 18). For the reasons set forth in this Order, FDLE's motion must be granted.

### I. Facts

The following facts are assumed to be true for the purpose of ruling on FDLE's motion. On or about August 9, 2003, Orange County Sheriff's Deputies Collington Campbell and Vicki Buford arrested and handcuffed Plaintiff in the presence of her daughter and grandchildren. At some point subsequent to her arrest, the deputies tazered Plaintiff twelve

times while she remained handcuffed. As a consequence of this incident, Plaintiff sustained numerous injuries including burn marks from the tazering.

### III. Motion to Dismiss Standard

To warrant dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. Alabama, 30 F.3d 117, 120 (11th Cir. 1994) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). In determining whether to grant a motion to dismiss, a court must accept all the factual allegations in the complaint as true and consider all reasonable inferences derived therefrom in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994); Hunnings v. Texaco, Inc., 29 F.3d 1480, 1484 (11th Cir. 1994).

### II. Analysis

Count IV of Plaintiff's Complaint alleges that FDLE breached its duty to train Deputies Campbell and Buford "in the use of force [generally] and in the proper application of handcuffs and tazers more specifically." Doc. 2 ¶¶ 64-65. FDLE argues, first, that it had no duty to train Deputies Campbell and Buford. Alternatively, FDLE contends that, even if it had such a duty, the activity of training law enforcement officers is a discretionary function and is, therefore, immune from tort claims under Florida law.

#### A. Kaisner's Two-Step Approach to Tort Claims Brought Against the State

Although the state of Florida waived its sovereign immunity in tort actions, Fla. Stat. § 768.28, the Florida Supreme Court, having determined "that the judiciary is ill-equipped

to interfere in the fundamental processes of the executive and legislative branches . . . [has] consistently . . . held that there remains a sphere of governmental activity immune from suit." Kaisner v. Kolb, 543 So. 2d 732, 733 (Fla. 1989).  That sphere has been defined to include the *discretionary*–as opposed to the *operational*–functions of the state.  See id. at 736.  In short, despite Florida's waiver of sovereign immunity, acts of the state which are discretionary in nature are nevertheless immune from suit.

Of course, as the Florida Supreme Court in Kaisner v. Kolb pointed out, the issue of immunity does not even arise until it is first determined that the state "owe[d] a duty of care to the plaintiff."  543 So. 2d at 734 (internal quotations and citations omitted); see also Pollock v. Florida Dep't of Highway Patrol, 882 So. 2d 928 (Fla. 2004); Storm v. Town of Ponce Inlet, 866 So. 2d 713, 715 (Fla. 5th DCA 2004).  A claim against the state fails, therefore, "if *either* (a) no duty of care existed, *or* (b) the doctrine of governmental immunity bars the claim."  Kaisner, 543 So. 2d at 734 (emphasis in original).

As explained below, Plaintiff has failed to sufficiently allege that FDLE owed her a duty of care.  Thus, in this instance, analysis of whether the act of training officers is discretionary or operational is unnecessary.

### B. Plaintiff Has Failed to Sufficiently Allege That FDLE Owed Her a Duty of Care

Florida law provides that, "[w]here a defendant's conduct creates a foreseeable zone of risk," the defendant has "a duty to either lessen the risk or see that sufficient precautions are taken to protect persons within that zone of risk from the harm that the risk poses." McCain v. Fla. Power Corp., 593 So. 2d 500, 503 (Fla. 1992).  At this stage of the analysis, FDLE's status as a state agency is irrelevant.  See Kaisner, 543 So. 2d at 735-36; Lewis v.

City of St. Petersburg, 260 F.3d 1260, 1263 (11th Cir. 2001).  If "the circumstances alleged would subject a private person to liability," the duty of care prong of Kaisner's two-step analysis is sufficiently satisfied.  Lewis, 260 F.3d at 1262.

Plaintiff alleges that FDLE created a "zone of risk"–and, therefore, a duty to Plaintiff–by training law enforcement officers in the use of force.[1]  Doc. 2 ¶ 57.  This contention–when considered along with Plaintiff's allegation of negligence–is a curious one.  Whittled to its core, Plaintiff's claim against the FDLE is that it created *a duty to train by training which it breached by failing to adequately train*.  Under this logic, FDLE could have, on the one hand, avoided liability altogether had it not undertaken the task of training officers in the first place; on the other hand, FDLE's negligence arose from not training the officers enough.  While the apparent implausibility of this theory might have been saved by an allegation that some peculiar aspect of the FDLE's initial training created a specific risk (thereby giving rise to an obligation to cure bad training with good training), Plaintiff's claim against FDLE rests upon no such allegation.[2]  Nor, for that matter, has Plaintiff made any attempt to explain how training, in and of itself, creates "a zone of risk."[3]  As it stands,

---

[1] There is, significantly, no allegation on Plaintiff's part that FDLE trained officers to use excessive or otherwise illegal force.

[2] The Court might have also been sympathetic to a claim–albeit a broad one–that the very act of hiring officers and entrusting them with the use of force creates "a zone of risk." However, even were the Court to accept such a claim in theory, it would not likely have met much success in this case given that Deputies Campbell and Buford were employees of Orange County and not FDLE.

[3] That the training was in the use of force is immaterial.  Presumably, Orange County deputies would be entrusted with the use of force in the absence of training by FDLE. Assuming as much, the training would, in the absence of evidence to the contrary, seem to

Plaintiff's argument simply provides far too flimsy a basis for recognizing the existence of legal duty.

Plaintiff's alternative argument–that a "zone of risk" was created when Plaintiff was taken into custody–fares no better.  (Doc. 31, at 5).  While it is true that an individual taken into custody by a law enforcement officer is owed a duty of care, see, e.g., 543 So. 2d at 734, the duty is owed principally by the arresting officers.  See id.  This is not to say that certain state agencies do not bear some responsibility in ensuring that persons taken into custody are not mistreated.  However, Plaintiff's claim provides no occasion to explore the scope of that responsibility.  Regardless of how great FDLE's duty to ensure the safety of persons taken into custody may be, it is an absurdity to contend–as Plaintiff effectively does–that, in the period between Plaintiff's initial arrest and the time when she suffered her alleged injuries,[4] the FDLE had a duty to train or supervise Deputies Campbell and Buford "in the proper application of handcuffs and tazers."[5]  Doc. 2 ¶ 57.

---

have the effect of decreasing, not increasing, the risks associated with officers using force.

[4] This assumes that the arrest and the infliction of at least some of the injuries were not simultaneous events.

[5] While Plaintiff does not herself connect these dots, her custody argument offers no other dots to connect.  That is, the only duty of FDLE which Plaintiff has identified is the duty to train or supervise law enforcement officers "in the proper application of handcuffs and tazers."

-5-

### III.  Conclusion

Because Plaintiff has failed to sufficiently allege that FDLE owed her a duty of care, the Court orders as follows:

1. FDLE's motion to dismiss (Doc. 18) is **GRANTED**.

2. Count IV of Plaintiff's Complaint is **DISMISSED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 8th day of July, 2005.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party